McFarland, J.,
delivered the opinion of the court.
The act of the Legislature of the State, approved July 8, 1870, provides that where from any cause the Judge of any court of record in this State (except the Supreme Court) fails to attend, or if in attendance, cannot properly preside in a case, the bar shall elect one of its members as special Judge, who shall preside in the place of the regular Judge.
Judge Baxter, of the Eighth Circuit, was elected and-commissioned after this new law came into force.
' At the September Term, 1873, he was ill, and was for a time unable to hold his court, whereupon the bar, under the above act, elected a special Judge who held the court.
*602 The act in question further provides that the special Judge shall be paid at the same rate as the regular Judge, for the time he serves, which is to be certified by the clerk, and the Comptroller is to issue his warrant for the amount, and the amount thus paid is to be deducted from the salary of the regular Judge.
When Judge Baxter, after this, applied for his quarterly salary, the Comptroller not regarding himself as authorized to disregard this act, tendered his warrant for the quarterly amount less the amount paid to the special Judge, which was received under protest, and this petition for a mandamus resorted to, to compel the issue of a warrant for what was thus deducted.
The purpose is to test the question of law.
The provision of the Constitution in question is Art. VI. sec. 7 : — “Judges of the Supreme or inferior courts shall at stated times receive a compensation for their services, to be ascertained by law, which shall not be increased or diminished during the term for which they were elected.”
If the act in question is to be regarded merely as an act diminishing the salaries of the Judges, then, as it was passed before before Judge Baxter was elected, it was not in conflict with the latter part of the above provision, against diminishing the salaries- of Judges during the term for which they were elected: it must therefore, be tested by another portion of the clause.
At the time of Judge Baxter’s election, the salaries *603 of the Circuit Judges were by law fixed at §2,500, and there has been 'no law reducing them below this sum applicable unconditionally to all the Judges.
The act in question is the only one on the subject.
Ve understand the above clause to mean that the salaries are to be fixed by law, — ascertained before hand and made certain, — so that the Judge who accepts the office may then know what he has to depend upon for his support, and may reliably expect to receive it while he fills the office.
But it is said that the Judge had notice of this law, and knew what to expect.
True, he had notice of the act, but if it was in conflict with the Constitution he was not precluded from relying upon the Constitution in preference to the act.
Take this as an amendment to the law regulating the salaries of Judges, and how does it - stand?
Judge Baxter knew that his salary was $2,500. But could he know beforehand that he was to receive that, or any particular sum, for his services for a given year ?
If he should be so fortunate as not to be ill, or incompetent in any case, and not to be prevented by any cause from holding his court, so that no special Judge should have to elected, then he might expect his whole salary ,• but otherwise his salary might be very small, and in fact might be reduced to almost no real compensation.
And yet he might have been guilty of no default. *604 If well, he might have been always ready and willing to hold his court, but the law might have prohibited him. If ill, he would been guilty of no default. He would have been Judge all the while.
Hoes he render no service, in the sense of the Constitution, except when on the bench ?
He still fills the office.
The law, for the wisest' reasons, prohibits the Judge, except in special cases, from practicing his profession as a lawyer. Is he to be precluded from this occupation and still deprived of a portion of his salary ?
Under this law, a stout, able-bodied Judge might receive a good salary, while one less robust might.be reduced to a small pittance.
The mere accident of relationship to parties might deprive the Judge of a considerable portion of his salary.
If the Judges were to be compensated for manual labor, the discrimination might not be unjust, but surely this is not the spirit of the Constitution in regard to the Judges, who ought to be made, in some degree at least, independent.
Their compensation is required to be ascertained by law; — previously ascertained, for it cannot be changed during the term.
In this case, if this law be valid, the salary was not ascertained: it depended upon the Judge’s subsequent good fortune and other uncertain events. If he fell ill, and needed his salary thereby all the more urgently, he might neverthless have none if a special Judge were elected.
*605 We concede that if this be the law, then no matter how exacting, it must be enforced; but we hold that it is not the spirit of the Constitution.
The salaries of the Judges have not been reduced in the sense of the Constitution; yet the act requires a portion of the salary of a Judge who may be unfortunate to be deducted and given to some one else, to pay him for doing the work which the Judge ought to have done.
Does the Constitution require any man to accept an office of this character upon such a provision?
We think certainly not.
It was not intended to pay the Judges according to their physical ability, or to make their compensation depend upon contingencies so uncertain, — at least when they have been in no default.
We need not express any opinion whether the case would be different if the Judge had been wilfully in default.
It is suggested in the brief of the Attorney General, that it is a delicate duty for the Judiciary to decide a question of this character against the Legislative department, and in favor of the Judicial department.
We admit it.
But we are supposed to be independent, not - indeed of the law and the Constitution, but of all improper influences, either the one way or the other.
We will act on this theory.
We cannot escape, if we would, a delicate duty simply because it is delicate.
*606 While fully conscious of our frailty, we will not suppose ourselves under auy improper influences.
An -act of the legislative department is entitled to our highest respect, and every proper presumption and intendment must be allowed in favor of its validity. We would not lightly disregard it, but it is our imperative duty to uphold the Constitution, and to declare when in our opinion • the Legislature has transcended constitutional restrictions.
When this clearly appears, we must discharge this duty with as little hesitation as any other.
Let the judgment of the Law Court of Nashville awarding the peremptory writ be affirmed.